UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE GARCIA,<br><br>                Plaintiff,<br>v.<br><br>J. GRIMM, et al.,<br><br>                Defendants. | Civil No. 06cv0225-WQH (PCL)<br><br>**REPORT AND RECOMMENDATION DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS (Doc. No. 70.)** |

## I. INTRODUCTION

On May 30, 2006, Felipe Garcia ("Plaintiff"), currently incarcerated at Mule Creek State Prison, proceeding *pro se* and *in forma pauperis*, filed a Second Amended Complaint ("SAC") pursuant to 42 U.S.C. § 1983.  (Doc. No. 29.)  Defendant John T. Lonsdale ("Lonsdale") filed a motion to dismiss Plaintiff's complaint with prejudice pursuant to FED. R. CIV. P. 12(b)(6).  After reviewing Plaintiff's complaint, Lonsdale's motion, Plaintiff's opposition, Lonsdale's reply and all accompanying documents, the Court recommends that Lonsdale's motion be DENIED in part and GRANTED in part.  The Court further recommends that Plaintiff be GRANTED leave to amend his complaint.

## II. FACTUAL BACKGROUND

Plaintiff alleges that on May 1, 2005, he suffered an "inhumane beating" by several San Diego County Sheriff's Deputies ("Deputies") while being detained at San Diego County Central Jail awaiting retrial.  (Doc. No. 29 at 3.)  On that day, Plaintiff was held in a cell within module 8-E and was involved

1  in a heated argument with a cellmate. (Id. At 8, 3) Due to the heated argument, Plaintiff feared an
2  attack from him. (Id.) As a result, Plaintiff contends, he stood near his cell door and prevented it from
3  closing – presumably to escape should his cellmate attack him. (Doc. No. 29 at 6.) Furthermore, he
4  held a "defense object"[1] in his hand. (Id.) Additionally, he wore "protective jailhouse" armor made of
5  books and magazines wrapped around his upper torso to deflect or lessen the impact of stab attempts.
6  (Id.) At some point, Plaintiff ran out of his cell toward the module door. Plaintiff says it was to avoid
7  confrontation. (Id.) Deputies guarding the module door noticed Plaintiff sprinting toward them. They
8  exited the module and attempted to close the module door. Plaintiff stuck his foot into the doorway to
9  prevent the door from closing. (Id.) An inmate within the module pulled Plaintiff away from the
10 module door, which allowed Deputies to close it. (Id. at 6.) While these events unfolded, Plaintiff
11 claims that Lonsdale was in the control tower recording the incident with a security camera. (Id. at 14.)

12        As a result of Plaintiff's dash, other Deputies responding to "EMERGENCY CALLS"[2] arrived at
13 the scene in an area between the module door and the cell hall within the module. (Id. at 7.) Plaintiff
14 contends that Deputies pushed his hands through the module door's tray slot while he held his defense
15 object. (Id.) Once his hands were stuck in the tray slot, one of the Deputies ordered Plaintiff to drop his
16 defense object. (Id.) When he complied, Deputies handcuffed him. Then, some Deputies bound ankle
17 restraints on him. At the same time, Plaintiff claims that other Deputies punched, kicked and twisted
18 Plaintiff's various body parts and tore his clothes off to remove his "protective jailhouse armor." (Id. at
19 8.) Meanwhile, the Deputies told Plaintiff to "stop resisting." (Id.) Plaintiff maintains that at this point,
20 he was not resisting and was following the Deputies' instructions. (Id.) Plaintiff asserts that, despite his
21 obedience, Deputies dragged him out of security camera view, (id. at 9), and continued beating him. (Id.
22 at 8.) The beating continued until one of the Deputies yelled, "that's enough." (Id. at 9.) Plaintiff
23 claims that while this entire fracas manifested between him and Deputies, Lonsdale was aware that
24 Deputies were using physical force against Plaintiff. (Id. at 7.)

---

[1] Defendants describe this "defense object" as a "shank." (Doc. No. 32 at 2.) The district court describes it as a sharp instrument. (Doc. No. 52 at 2.)

[2] Plaintiff seems to imply that Lonsdale was somehow connected to the emergency calls. Plaintiff asserts that Deputies responded to emergency calls "as Defendant Lonsdale assigned to control tower 8th floor was aware of security emergency incident in progress as to follow sheriff policy procedures." (Doc. No. 29 at 7). But Plaintiff is unclear about Lonsdale's role with regards to the calls.

After the alleged beating, Plaintiff recalled several Deputies saying, "you are in big trouble[.] [Y]ou assaulted [three] deputies; help us and we will get you medical attention." (Id. at 12.) Then, several Deputies conducted interviews with him to get statements about the beating. (Id. at 14.) Lonsdale also recorded these interviews. (Id.) As a result of the reports from these interviews, Plaintiff insists that he was falsely charged with assaulting various jail staff members and "suffered retaliatory punishments because of these charges." (Id. at 23.)

Additionally, Plaintiff asserts that after the beating, the jail's physician examined him. (Id. at 17.) According to Plaintiff, the physician concluded that Plaintiff had suffered fractures and required a follow up examination in addition to proper medical care. (Id.) However, Plaintiff contends he did not receive further medical attention. (Id.)

### III. PROCEDURAL BACKGROUND

Plaintiff filed this 42 U.S.C. § 1983 action, claiming the defendants named in the SAC violated his Sixth, Eighth and Fourteenth Amendment rights during separate incidents occurring between May 1, 2005 and May 5, 2005. (Doc. No. 29 at 3.) Plaintiff initially named twelve defendants to the case, (id.), and has amended his complaint to clarify the identities of the defendants. (Compare Doc. No. 1 at 5-6 with Doc. No. 29 at 7.) Ten of the defendants are allegedly San Diego County Sheriff's Deputies, and Plaintiff asserts that they used "blatant exag[g]erated unnecessary force" against him in violation of his Eighth Amendment rights. (Doc. No. 29 at 3, 7.) Plaintiff also claims that the jail's physician, identified as Jane Doe, denied him proper medical treatment after the beating. (Id. at 5, 17.) Moreover, Plaintiff alleges that Lonsdale, also a deputy, witnessed the beating in the control tower and recorded the altercation with a security camera. (Id. at 7, 9, 14.) Finally, Plaintiff asserts that the defendants conspired to "cover up" the beating. (Id. at 3.) Plaintiff seeks injunctive relief and compensatory and punitive damages. (Id. at 25-26.)

As aforementioned, Lonsdale filed a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6). (Doc. No. 70.) He argues that Plaintiff's claims should be dismissed with prejudice because the SAC failed to state any viable 42 U.S.C. § 1983 claim against him. (Id. at 3.)

Plaintiff, in his opposition, retorts that Lonsdale conspired to violate his constitutional rights. (Doc. No. 74 at 4.) Plaintiff further argues that Lonsdale had an affirmative duty to help Plaintiff when

he witnessed the beating, and his failure to do so violated Plaintiff's constitutional rights.  (Id. at 5.) Finally, Plaintiff argues that it "would serve justice" for Lonsdale to be at trial because he witnessed the incident.  (Id. at 5-6.)

Lonsdale, in turn, has filed a reply to Plaintiff's opposition.  He insists that Plaintiff failed to plead essential facts.  (Doc. No. 80 at 3.)  In addition, Lonsdale maintains that Plaintiff wants to keep him in the case for the sole purpose of having him as a witness.  (Id. at 4.)

### IV. DEFENDANTS' MOTION TO DISMISS PURSUANT TO 12(b)(6)

A.   Standard of Review per FED.R.CIV.P. 12(b)(6)

Lonsdale seeks to dismiss Plaintiff's claims against him on a Rule 12(b)(6) motion.  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims within a complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Thus, a complaint or a claim within a complaint may be dismissed under this rule if it is insufficient.  A claim is insufficient if it lacks a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").  Alternatively, a claim may also be insufficient if it presents a cognizable legal theory yet fails to plead essential facts under that theory.  Robertson, 749 F.2d at 534.

If a claim is dismissed because the complaint fails to allege essential facts, then leave to amend the complaint should be granted along with the dismissal "unless the district court determines that the pleading could not possibly be cured by the allegation of other facts."  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).  Therefore, dismissing a claim with prejudice under this rule is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Navarro, 250 F.3d at 732.  In fact, a motion to dismiss under Rule 12(b)(6) is generally "viewed with disfavor and is rarely granted." Gilligan v. Jamico Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

In reviewing the sufficiency of a complaint, the court must assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party.  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

he witnessed the beating, and his failure to do so violated Plaintiff's constitutional rights.  (Id. at 5.) Finally, Plaintiff argues that it "would serve justice" for Lonsdale to be at trial because he witnessed the incident.  (Id. at 5-6.)

Lonsdale, in turn, has filed a reply to Plaintiff's opposition.  He insists that Plaintiff failed to plead essential facts.  (Doc. No. 80 at 3.)  In addition, Lonsdale maintains that Plaintiff wants to keep him in the case for the sole purpose of having him as a witness.  (Id. at 4.)

he witnessed the beating, and his failure to do so violated Plaintiff's constitutional rights.  (Id. at 5.) Finally, Plaintiff argues that it "would serve justice" for Lonsdale to be at trial because he witnessed the incident.  (Id. at 5-6.)

Lonsdale, in turn, has filed a reply to Plaintiff's opposition.  He insists that Plaintiff failed to plead essential facts.  (Doc. No. 80 at 3.)  In addition, Lonsdale maintains that Plaintiff wants to keep him in the case for the sole purpose of having him as a witness.  (Id. at 4.)

### IV. DEFENDANTS' MOTION TO DISMISS PURSUANT TO 12(b)(6)

A.   Standard of Review per FED.R.CIV.P. 12(b)(6)

Lonsdale seeks to dismiss Plaintiff's claims against him on a Rule 12(b)(6) motion.  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims within a complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Thus, a complaint or a claim within a complaint may be dismissed under this rule if it is insufficient.  A claim is insufficient if it lacks a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").  Alternatively, a claim may also be insufficient if it presents a cognizable legal theory yet fails to plead essential facts under that theory.  Robertson, 749 F.2d at 534.

If a claim is dismissed because the complaint fails to allege essential facts, then leave to amend the complaint should be granted along with the dismissal "unless the district court determines that the pleading could not possibly be cured by the allegation of other facts."  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).  Therefore, dismissing a claim with prejudice under this rule is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Navarro, 250 F.3d at 732.  In fact, a motion to dismiss under Rule 12(b)(6) is generally "viewed with disfavor and is rarely granted." Gilligan v. Jamico Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

In reviewing the sufficiency of a complaint, the court must assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party.  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

The court may consider the facts alleged in the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and matters of which the court takes judicial notice. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 2003); Thompson, 295 F.3d at 895. In addition, a court may hypothesize facts, "consistent with the complaint, that would make out a claim." Graelhing v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

In addition, while the above-stated guidelines "apply equally as well to civil rights complaints brought by *pro se* plaintiffs," such pleadings are held to an even "less stringent standard than formal pleadings drafted by lawyers." Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980). Thus, federal courts are particularly liberal in construing "inartful pleadings" by parties appearing *pro se*. Huges v. Rowe, 449 U.S. 5, 9 (1980). Naturally, *pro se* plaintiffs should be given "an opportunity to amend [their] complaint[s] to overcome any deficiency unless it clearly appears...that the deficiency cannot be overcome by amendment." Id. (emphasis added); see Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988); see also Robertson 749 F.2d at 541 (court remanded district court's granting of a motion to dismiss because while the plaintiff had not alleged essential facts necessary to establish his claim in the complaint, the record had nothing that clearly showed he was unable to plead such facts through an amended complaint).

B.    Analysis of Plaintiff's Claims

    1. Breach of Duty Claim

Under 42 U.S.C. § 1983, a person is liable for deprivation of another's constitutional right "if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis added). Since generally, a law enforcement officer acting within the scope of their duties has a common law duty to exercise ordinary care "with respect to the safety and well being of persons in their custody," 63 C.J.S. *Munccorp* § 492 (2007), a corrections officer has an affirmative duty to reasonably intervene on behalf of a prisoner if other officers are

violating that prisoner's constitutional rights in his presence or if he knows that the prisoner's rights are being violated. Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (court held that a prison official could violate a prisoner's 8th Amendment rights by failure to intervene); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972); see also Whirl v. Kern, 407 F.2d 781, 788 (5th Cir. 1968) (court held that negligence nonfeasance was a proper basis for imposition of tort liability under 42 U.S.C. § 1983). In other words, an officer has a duty to act reasonably on behalf of a prisoner if he knows or can reasonably infer that other officers are using excessive force against that prisoner.

However, there must be a causal link between an officer's inaction and the plaintiff's injuries or deprivation of a constitutional right. Johnson, 588 F.2d at 743; see Monroe v. Pape, 365 U.S. 167, 181 (1961) (Court held that "[42 U.S.C. § 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.") Usually, for cause to be established against defendants who failed to act in presence of an alleged use of excessive force by other officers, factors such as whether the defendant had reasonable time to intervene, and whether the defendant had tacitly collaborated with the officers using force should be considered. O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988). More simply put, "officers can be held liable for failure to intercede only if they had an opportunity to intercede." Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

Given that Plaintiff is proceeding *pro se* and filing a civil rights complaint, the Court should construe his pleading liberally, Thompson, 295 F.2d at 895, and in a light most favorable to him. Gillespie, 629 F.2d at 640. Since Plaintiff maintains that Lonsdale was aware of the altercation taking place on May 1, 2005, then clarifies his grievance in his opposition by asserting that Lonsdale violated 42. U.S.C. § 1983 when he failed to interfere on his behalf, he has adequately articulated a cognizable legal theory based on a breach of duty on Lonsdale's part. Thus, the question that remains is whether Plaintiff pleaded essential facts to establish his theory.

Plaintiff must allege facts that show Lonsdale knew or could reasonably infer that Plaintiff's rights were being violated on May 1, 2005. Byrd, 466 F.2d at 11. In other words, his assertions must show that Lonsdale could have reasonably interpreted the Deputies' conduct during their engagement with Plaintiff as more than just a good faith effort to prevent an inmate from escaping. Additionally, he

1  must plead facts which show that his inaction is causally linked to Plaintiff's injuries.  <u>Johnson</u>, 588
2  F.2d at 743.
3        Construing the facts in a light most favorable to the non-moving party, the Court finds that
4  Plaintiff has asserted enough facts to show that Lonsdale could have been aware that Plaintiff's rights
5  were being violated.  Plaintiff maintains that Lonsdale was aware that Deputies were using what
6  Plaintiff describes as " blatant exag[g]erated unnecessary force" against him during the incident on May
7  1, 2005.  (Doc. No. 29 at 7.)  Plaintiff asserts that several Deputies began punching, kicking and twisting
8  Plaintiff <u>after</u> he had been contained in an area between the module door and cell hall and <u>after</u> he had
9  dropped his defense object.  (<u>Id.</u>)  Meanwhile, nothing on the record shows that Plaintiff tried to hit
10 Deputies back, even for self protection against the punches and kicks.  In fact, Plaintiff states that "at
11 this point," he was not resisting.  (<u>Id.</u> at 8.)  Thus, construed in the light most favorable to Plaintiff,
12 multiple Deputies appeared to have been hitting a prisoner who was not resisting.  Hence, it would also
13 be consistent to hypothesize that on May 1, 2005, Lonsdale saw that Deputies were hitting a compliant
14 and passive Plaintiff.  Therefore, Lonsdale could have known that Deputies were using excessive force
15 against Plaintiff.
16       By similar reasoning, the Court may infer that Lonsdale's inaction could be causally connected
17 to Plaintiff's injuries.  Plaintiff claims that Deputies beat him in an area between the module door and
18 the cell hall.  (Doc. No. 29 at 7.)  Plaintiff also claims he suffered a second beating after Deputies
19 dragged him away from security camera view.  (<u>Id.</u> at 9.)  Meanwhile, Lonsdale presumably saw the
20 altercation taking place in a control tower through a security camera.  (<u>Id.</u> at 14.)  The Court may
21 reasonably infer that Lonsdale had communication equipment in the control tower and should have
22 called other officers
23 to stop the beating[3].  The Court may also infer that the entire altercation did not happen instantaneously:
24 it lasted long enough for Deputies to beat Plaintiff, remove his "protective jailhouse armor," and to drag
25 him away from the view of the security camera.  Thus, if Lonsdale had called other officers, they might

---

[3]Plaintiff mentions that Deputies responded to emergency calls and that these calls might be connected to Lonsdale. (Doc. No.29 at 7)  However, Plaintiff does not state who made the emergency calls. In construing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff is maintaining that Lonsdale did not make the calls.

have been able to arrive at the scene in time to stop Deputies and mitigate Plaintiff's injuries. Therefore, construing the facts in a light most favorable to Plaintiff, the Court finds that Lonsdale could of had a reasonable opportunity to intercede on behalf of Plaintiff.

For the foregoing reasons, the Court recommends that Lonsdale's motion as to Plaintiff's first claim be DENIED.

2. Conspiracy Claim

A civil conspiracy occurs when "the parties have reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." Transgo Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1020 (9th Cir. 1985). In other words, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict the harm or injury upon another." Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir. 1979); Rotomound v. U.S. Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973). However, an agreement to commit a civil wrong alone is insufficient. Generally, one of the conspirators must also commit an overt act in furtherance of the agreement, and a plaintiff must suffer an injury as a result of some act done in carrying out the agreement in order for there to be a cause of action for civil conspiracy. 16 AM. JUR. 2D *Conspiracy* § 51 (2007). Thus, specifically, to have an action for conspiring to violate 42 U.S.C. § 1983, "there must be a showing that the defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy, which resulted in plaintiff being deprived of the constitutional right." Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992).

Here, Plaintiff asserts that there appeared to be "covering up" involved. Plaintiff recalls that Deputies wanted him to change his story about the beating in order to receive medical treatment. (Doc. No. 29 at 12.) Plaintiff states that several Deputies said, "help us, and we will get you medical attention." (Id.) Based on these observations, Plaintiff contends that a group of people planned the cover up. Additionally, the Deputies' alleged dialoging with the Plaintiff and falsifying of reports may constitute overt acts since they were done in an effort to achieve the cover up. Hafner v. Brown, 938 F.2d at 577. Finally, there appears to be a deprivation of Plaintiff's rights as a result of the attempted cover up. Plaintiff's ability to claim relief against excessive use of force is compromised by the

allegedly falsified reports.  Also, Plaintiff suffered "continuous indifferent retaliatory punishment" as a result of the assault charges.  (Id. at 23.)

However, Plaintiff has not asserted that Lonsdale was involved in the "cover up" along with the other Deputies.  For example, he has not alleged that Lonsdale agreed with the other Deputies to falsify reports or that he acted in concert with other defendants in making up a story about what transpired on May 1, 2005.  Additionally, he has not asserted any facts which allows the court to reasonably infer that there might have been an agreement between Deputies and Lonsdale to "cover up the beating."  The only assertion Plaintiff has made with regards to the conspiracy claim is a legal conclusion that "defendants conspired to cover up the beating."  Thus, based on the SAC alone, Plaintiff has not pleaded any essential facts which makes Lonsdale liable to him for conspiracy.

### 3. Plaintiff Should be Given a Chance to Amend his Complaint

With respect to the conspiracy claim, Plaintiff's SAC is insufficient because he failed to allege essential facts.  Robertson, 749 F.2d at 534.  As just discussed, Plaintiff does not allege facts which show that Lonsdale agreed with the other deputies to cover up the beating.  However, it is not plainly clear that Plaintiff would not be able to assert these facts in an amended complaint.  In other words, the SAC's insufficiencies might be curable through amendments.  It is plausible that Plaintiff simply did not know which facts he needed to allege in order to state a viable conspiracy claim against Lonsdale.  Hypothetically, Plaintiff might know some facts that connect Lonsdale to the "cover up," but simply did not include them in his complaint.

While Plaintiff has amended his complaint twice, it appears that he did so only to clarify the identities of the defendants he wanted to bring into the action.  (Compare Doc. No. 1 with Doc. No. 29.)  Given that Plaintiff is proceeding *pro se*, Gillespie, 629 F.2d at 640, and the record does not clearly show the claim to be implausible, frivolous, or unprovable, the Court recommends that Lonsdale's motion with respect to the second claim be should GRANTED without prejudice.

//
//
//
//

## V. CONCLUSION

In summary, the Court recommends DENYING Lonsdale's motion to dismiss Plaintiff's breach of duty claim and GRANTING without prejudice Lonsdale's motion to dismiss Plaintiff's conspiracy claim against him. As discussed above, while Plaintiff has sufficiently stated two cognizable legal theories under which Lonsdale may be brought to this action, he has only asserted sufficient essential facts for his breach of duty theory. Nevertheless, because the record does not clearly show that facts essential for Plaintiff's conspiracy claim against Lonsdale either do not exist, can not be proved, or can not be asserted in an amended complaint for any other reason, the failure to allege them is not an uncorrectable deficiency. See Robertson 749 F.2d at 541. Thus, the Court also recommends GRANTING Plaintiff leave to amend his complaint. Bly-Magee, 236 F.3d at 1019.

IT IS ORDERED that, no later than **August 1, 2007**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to objections shall be filed ON OR BEFORE **August 15, 2007**. The Parties are advised that failure to file objections within the specified time may waive the right to raise objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 29, 2007

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: The Honorable William Q. Hayes
    All Counsel of Record