1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9

FILIPE NOE GARCIA,

CASE NO. 06cv225 WQH (PCL)

10

Plaintiff,

**ORDER**

vs.

11

JG GRIMM; ELLEEN GABEL;
GRIJALVA; GONZALEZ; SGT
HIGHTOWER; RHINELANDER;
SETTER; SWINEY; J. MACLEOD; M
MASSEY; B NEAGLES,

12

13

14

Defendants.

15

16

HAYES, Judge:

17

        The matters before the Court are the Petition for a Writ of Habeas Ad Testificandum

18

(ECF No. 144), the Motion for Order Subpoenas for Plaintiff's Witness (ECF No. 145), the

19

Motion for Attendance of Incarcerated Witness (ECF No. 146), and the Motion for Status

20

Update (ECF No. 168) filed by Plaintiff Filipe Noe Garcia; and the Motion for Summary

21

Judgment (ECF No. 152) filed by Defendants.

22

## BACKGROUND

23

        On January 1, 2006, Plaintiff, a state prisoner proceeding *pro se*, initiated this action

24

by filing his Complaint. (ECF No. 1). On May 30, 2006, Plaintiff filed his Second Amended

25

Complaint which added Defendants J. MacLeod, Deputy Lonsdale, M Massey, and B Neagles.

26

(ECF No. 29). On July 13, 2007, Plaintiff filed his Third Amended Complaint ("TAC") which

27

is the operative pleading in this case. (ECF No. 90). On September 20, 2007, the Court

28

dismissed the case against Defendant Deputy Lonsdale. (ECF No. 101). On March 3, 2008,

the Court dismissed Plaintiff's prayer for injunctive relief and struck portions of the TAC. (ECF No. 113).

On June 1, 2009, the Court held a pretrial conference. (ECF No. 133). Following the pretrial conference, the Court reopened discovery.

On February 2, 2010, the Court held a status hearing. (ECF No. 135). Following the February 2, 2010 status conference, the Court issued an order requiring Plaintiff to file a Second Amended Proposed Pretrial Order which listed each claim which: "(1) Plaintiff believes he alleged in the complaint; (2) have not been dismissed by this Court; and (3) Plaintiff intends to proceed to trial on." (ECF No. 142 at 1). The Court also ordered Plaintiff to file a Writ of Habeas Corpus Ad Testificandum. *Id*.

On March 17, 2010, Plaintiff filed a Petition for a Writ of Habeas Ad Testificandum (ECF No. 144); a Motion for Order Subpoenas for Plaintiff's Witness (ECF No. 145); and a Motion for Attendance of Incarcerated Witness (ECF No. 146).

On May 6, 2010, the Court held a status conference during which the Court ordered Defendants to file any motion to dismiss or motion for summary judgment on or before June 11, 2010. (ECF No. 149). On June 4, 2010, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction stating that when he was moved to administrative segregation, Defendants filed to move a "box of legal property that contains all the legal documents, evidence, [and] audio evidence germane to this case...." (ECF No. 150-1 at 2) (emphasis omitted).

On June 10, 2010, Defendants filed a Motion for Summary Judgment. (ECF No. 152). On July 2, 2010, Plaintiff filed an Opposition to the Motion for Summary Judgment. (ECF No. 157).

On July 15, 2010, and on July 21, 2010, Defendants filed status reports and on August 5, 2010, Plaintiff filed a status report regarding the return of legal documents and evidentiary materials to Plaintiff. (ECF Nos. 158, 159, 161).

On August 16, 2010, this Court issued an Order denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction as moot and setting a date for

1    Plaintiff to file any additional opposition to the Motion for Summary Judgment.  (ECF No. 163

2    at 7).  On that same day the Court issued a notice pursuant to *Rand v. Rowland*, 154 F.3d 952

3    (9th Cir. 1998)(en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) notifying

4    Plaintiff that he "must set out specific facts in declarations, depositions, answers to

5    interrogatories, or authenticated documents...that contradict the facts shown in the defendants'

6    declaration and documents and show that there is a genuine issue of material fact for trial."

7    (ECF No. 164 at 2).

8         On September 2, 2010, Plaintiff filed an Opposition to the Motion for Summary

9    Judgment along with Exhibits A-F, G1-G3, and H.  (ECF No. 165).  On October 4, 2010,

10   Defendants filed a Reply.  (ECF No. 167).

11        On January 28, 2011, Plaintiff filed a Motion for Status Update (ECF No. 168).

12   **I.      Defendants' Motion for Summary Judgment**

13        Plaintiff's verified Third Amended Complaint ("TAC") asserts the follows claims:

14   (1) cruel and unusual punishment in violation of the Eighth Amendment due to use of

15   excessive force against James Grimm ("Grimm"), Bruce Hightower, ("Hightower"), Aaron

16   Rhinelander ("Rhinelander"), Andrew Setter ("Setter"), James Swiney ("Swiney"), and

17   Jacob MacLeod ("MacLeod"); (2) deliberate indifference to medical needs against Grimm,

18   Hightower, Rhinelander, Setter, Swiney, MacLeod, Gonzalez ("Gonzalez"), M. Massey

19   ("Massey"), B. Neagles Cartier ("Neagles"), Grijalva ("Grijalva"), and Dr. Elleen Gabel

20   ("Dr. Gabel"); (3) intentional assault and battery against Grimm, Hightower, Rhineland,

21   Setter, Swiney, and MacLeod; (4) violation of the due process clause under the sixth and

22   fourteenth amendments against Grimm; (5) cruel and unusual punishment in violation of

23   the Eighth Amendment due to deliberate indifference to Plaintiff's basic human needs

24   against Grimm; and (6) conspiracy against Grimm, Hightower, Rhinelander, Setter,

25   Swiney, MacLeod, Gonzalez, Massey, Neagles, Grijalva, and Dr. Gabel.  (ECF No. 90 at

26   25-28).

27        Defendants seeks summary judgment on the following claims: (1) the second claim

28   regarding deliberate indifference to medical needs against Grimm, Hightower, Rhinelander,

1  Setter, Swiney, MacLeod, Massey, Neagles, and Grijalva; (2) the third claim regarding

2  intentional assault against Grimm, Hightower, Rhineland, Setter, Swiney, and MacLeod;

3  (3) the fourth claim regarding violation of the due process clause under the sixth and

4  fourteenth amendments against Grimm; and (4) the sixth claim regarding conspiracy

5  against Grimm, Hightower, Rhinelander, Setter, Swiney, MacLeod, Massey, Neagles and

6  Grijalva.  (ECF No. 152-1 at 9).

7       Plaintiff contends that summary judgment should not be granted as to any claim

8  because there are genuine issues of material fact.

9                          **LEGAL STANDARD**

10      Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

11  Procedure where the moving party demonstrates the absence of a genuine issue of material

12  fact and entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex*

13  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing

14  substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*,

15  477 U.S. 242, 248 (1986).  A dispute over a material fact is genuine if "the evidence is such

16  that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

17      "When the party moving for summary judgment would bear the burden of proof at

18  trial, it must come forward with evidence which would entitle it to a directed verdict if the

19  evidence went uncontroverted at trial.  In such a case, the moving party has the initial

20  burden of establishing the absence of a genuine issue of fact on each issue material to its

21  case."  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (quotation

22  omitted).  "Once the moving party comes forward with sufficient evidence, the burden then

23  moves to the opposing party, who must present significant probative evidence tending to

24  support its claim or defense."  *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*,

25  213 F.3d 474, 480 (9th Cir. 2000) (citation omitted).

26      "In ruling on a motion for summary judgment, the nonmoving party's evidence is to

27  be believed, and all justifiable inferences are to be drawn in that party's favor."  *Hunt v.*

28  *Cromartie*, 526 U.S. 541, 552 (1999) (quotation omitted); *see also DiRuzza v. County of*

1    *Tehama*, 206 F.3d 1304, 1314 (9th Cir. 2000) ("For purposes of summary judgment . . . ,

2    we must presume the facts to be those most favorable to the non-moving party."); *Leslie v.*

3    *Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (The nonmoving party's declaration or

4    sworn testimony "is to be accepted as true . . . .   [The non-movant's] evidence should not

5    be weighed against the evidence of the [movant]."). "But the non-moving party must come

6    forward with more than the mere existence of a scintilla of evidence.  Thus, 'where the

7    record taken as a whole could not lead a rational trier of fact to find for the nonmoving

8    party, there is no genuine issue for trial.'"  *Miller*, 454 F.3d at 988 (quoting *Matsushita*

9    *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Nelson v.*

10   *Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and

11   speculation do not create a factual dispute for purposes of summary judgment.") (citation

12   omitted).

13          When the nonmoving party is proceeding pro se, the Court has a duty to consider

14   "all of [the nonmovant's] contentions offered in motions and pleadings, where such

15   contentions are based on personal knowledge and set forth facts that would be admissible

16   in evidence, and where [the nonmovant] attested under penalty of perjury that the contents

17   of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 922-23

18   (9th Cir. 2004) (citations omitted).

19          **(1)    Second Claim:  Deliberate Indifference to Medical Needs Against**
               **Grimm, Hightower, Rhinelander, Setter, Swiney, MacLeod, Massey,**
20             **Neagles and Grijalva**

21          Defendants contend that there is no evidence to support a claim for failure to

22   summon or provide medical care in this case.  (ECF No. 152-1 at 14).  Defendants contend

23   that the medical records prove that Plaintiff was examined by a nurse before being placed

24   in the psychiatry safety cell, and he was regularly observed thereafter.  Defendants contend

25   that the medical records show that Plaintiff was examined by a psychiatrist the day after the

26   altercation, before he was transfer to another safety cell and Plaintiff was examined and

27   treated by medical personnel over the next five days.  Defendants contend that Plaintiff's

28   "bald assertion" that he was denied medical care "cannot raise a triable issue of material

fact ... because all [these Defendants] are security deputies, not medical practitioners, and thereby must necessarily place their confidence in the opinions of jail nurses and doctors observing and evaluating [Plaintiff] ...." (ECF No. 167 at 3). Defendants also contend that Plaintiff's "opinion as to the appropriate course of medical care does not create a triable issue of fact ...." *Id*. at 4.

Plaintiff contends that "[a]fter the beating of Plaintiff; the defendants knew or should have known that he received severe injuries to head, body, arms, and legs, and it was their duty to provide the adequate medical care; not only to be observed by [a] licensed vocational nurse, which is not qualified to make diagnosis and/or prescribe medication or provide the adequate treatment[.]" (ECF No. 165 at 10). Plaintiff contends that upon arrival to the safety cell, "a nurse was present, but did not provide medical care ... furthermore [a] nurse is not qualified to treat or diagnose any serious trauma and injuries suffered." *Id*. at 12. Plaintiff contends that "Dr. Elleen Gabel examined Plaintiff on May 3, [approximately] 48 [hours] after the severe injuries were made by defendants...." *Id*. at 13. Plaintiff contends that prior to the examination by Dr. Gabel, "the only treatment provided was the observation of a nurse ...." *Id*. at 14. Plaintiff contends that after the examination by Dr. Gabel, "Defendants interfered and never took Plaintiff back to receive the appropriate treatments." *Id*. at 14.

Plaintiff and Defendants have each submitted portions of Plaintiff's medical records. Defendants have also submitted a psychiatry safety cell evaluation form which states that Plaintiff's safety cell placement was initiated on May 1, 2005, at 6:20 p.m. (ECF No. 152-4 at 115). A medical chart entry dated May 1, 2005, at 6:49 p.m. states that Plaintiff was brought to the psychiatric safety cell on a gurney and Plaintiff was observed to be "still combative, unable to check [vital signs] at this time ....." *Id*. at 101. There are medical chart entries listing observations of Plaintiff by medical personnel on May 1, 2005, at 7:21 p.m., 8:44 p.m., 10:02 p.m., 10:38 p.m., 11:25 p.m. *Id*. at 99-100. The medical chart entry May 1, 2005, at 11:25 p.m. states: "[Inmate] refused to come out of the cell to have a further evaluation to see the extent of medical complaint.... [Inmate] was observed to be

standing on both feet for 10 minutes without difficulty, he also showed nurse that he can extend and flex his arm without difficult.  There is no obvious discoloration of skin noted, there is slight red marks around the [right] wrist only. [Inmate] is able to do pronation and supination of hands.  Refusal form was signed by nurse ... form was filed in chart." *Id*. at 99.  Plaintiff has submitted a Refusal - Release From Responsibility form which states that on May 1, 2005, at 11:23 p.m., Plaintiff refused medical evaluation by a nurse.  (ECF No. 165-2 at 3).

There are additional medical chart entries listing observations of Plaintiff by medical personnel on May 2, 2005, at 12:42 a.m., 1:47 a.m., 2:45 a.m., 3:34 a.m., 4:49 a.m., 5:45 a.m., 6:37 a.m., 7:26 a.m., 8:05 a.m., 9:17 a.m., and 10:37 a.m.  (ECF No. 152-4 at 97-99).  The psychiatry safety cell evaluation form was signed by a medical doctor on May 2, 2005, at 9:00 a.m. and states the chief subjective complaint was that Plaintiff had taken a lot of medication over the past week that he had saved from prior prescriptions. *Id*. at 115.  The psychiatry safety cell evaluation form contains objective mental status evaluations, diagnoses, and instructions that Plaintiff was "cleared to medical" and that Plaintiff was "[referred] to [registered nurse] to assess [ethanol]/substance withdrawal." *Id*.  A medical chart entry dated May 2, 2005, at 9:17 a.m. states that Plaintiff had been "seen by [a medical doctor]. Awake and conversant to [the medical doctor.] [Respiration was] regular and even." *Id*. at 97.  A medical chart entry dated May 2, 2005, at 11:05 a.m. notes that Plaintiff was examined by a nurse who states, "Denies any discomfort or pain at this time ... Seen by Dr. Monroe and cleared him to safety cel[l]."  (ECF No. 165-2  at 4).

A medical chart entry dated May 3, 2005, at 11:19 a.m. entered by Dr. Gabel states: "This is a 37 [year] old man who was involved in an altercation 4/30 [complaints of] bilateral foot pain noted swelling of [right] foot and left wrist on exam there is ecchymosisi in the left temporal aspect of skull and auricular area with no drainage or [hematoma] in [external auditory] canal.  There is localized swelling of left wrist as well as swelling of [right] foot with [hematoma] with left foot.  [Impression: rule out] fracture.  Plan: xrays." *Id*. at 7.  A medical chart entry dated May 3, 2005, at 11:46 a.m. orders that "x-ray [to be

1  taken] today." *Id*. at 6.

2      Plaintiff has submitted radiology reports dated May 3, 2005, between approximately

3  2:00 p.m. to 2:30 p.m. recording the results from x-rays performed on Plaintiff's right foot,

4  left foot, left wrist, and skull. *Id*. at 17-20. The results were all normal except for

5  Plaintiff's right foot which showed, "possible chip fracture[]" *Id*. at 17. The radiologist

6  stated: "please correlate clinically." *Id*. A medical chart note entry dated May 3, 2005, at

7  4:01 p.m. states: "[Follow up] per [medical doctor] for x-ray results: [possible] chip

8  [fracture]." *Id*. at 8.

9      A medical chart entry dated May 4, 2005, at 9:45 a.m. states: "Seen by [medical

10  doctor] and with order for PSYCH referral. Requested." *Id*. A Psychiatry Evaluation was

11  complete for Plaintiff dated May 5, 2005, at 2:00 p.m. *Id*. at 23-24. A medical chart entry

12  dated May 5, 2005, at 6:20 p.m. states, "Psych orders noted and carried out." *Id*. at 9. On

13  May 6, 2005, Plaintiff was prescribed 975 milligrams of Tylenol to start on May 6, 2005

14  and terminate on May 20, 2005. *Id*. at 11. Neither party has submitted additional medical

15  records from May 7, 2005 to May 16, 2005, when Plaintiff was transferred to Richard J.

16  Donovan Correctional Facility.

17      The Eighth Amendment provides that the government has an "obligation to provide

18  medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S.

19  97, 103 (1976). Prison officials are deliberately indifferent to a prisoner's serious medical

20  needs when they "deny, delay or intentionally interfere with medical treatment."

21  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To assert a claim for

22  inadequate medical care, a prisoner must allege facts sufficient to fulfill two requirements:

23  one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

24  Under the objective requirement, the prisoner must show that he had a serious medical need

25  which "exists if the failure to treat a prisoner's condition could result in further significant

26  injury or the 'unnecessary and wanton infliction of pain'." *See McGuckin v. Smith*, 974

27  F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v.*

28  *Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (quotation omitted). Under the

1  subjective requirement, the prisoner must show that the defendant acted with "'deliberate

2  indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834.  "[T]he official must be

3  both aware of facts from which the inference could be drawn that a substantial risk of

4  serious harm exists, and he must also draw the inference." *Id*. at 837.

5       The evidence in this case shows that Plaintiff was brought to the psychiatric safety

6  cell immediately following the altercation with Defendants and placed under the care of

7  medical personnel.  Plaintiff was offered medical care and was observed several times over

8  the course of that evening and the following morning.  He was psychologically evaluated

9  by a doctor, cleared for placement in a safety cell, and referred to a nurse for continued

10  observations which were performed.  Plaintiff was also examined by a second medical

11  doctor within approximately 41 hours of being placed under medical care.

12       Plaintiff's conclusory assertions that he was denied medical care do not support a

13  claim for failure to summon or provide medical care in this case.  Plaintiff has failed to

14  offer any evidence to show that Defendants, who are not medical personnel, were either

15  objectively or subjectively aware of any substantial risk of harm regarding Plaintiff's

16  serious medical needs.  Defendants caused Plaintiff to be placed under the care of medical

17  professionals immediately after the incident in question on May 1, 2005.  There is no

18  evidence that Defendants learned of any of Plaintiff's medical results or that they had any

19  authority over providing Plaintiff additional medical care. *See Farmer v. Brennan*, 511

20  U.S. 825, 834 (1994).

21       The Court concludes that there are no material facts in dispute and Defendants are

22  entitled to judgment as a matter of law as to Plaintiff's claim of deliberate indifference to

23  medical needs against Grimm, Hightower, Rhinelander, Setter, Swiney, MacLeod, Massey,

24  Neagles and Grijalva.

25       **(2)     Fourth Claim: Violation of the Due Process Clause under the Sixth and
               Fourteenth Amendments Against Grimm**

26

27       Defendants contend that Plaintiff's claim against Grimm for violation of the Sixth

    and Fourteenth Amendments are not cognizable under 42 U.S.C. § 1983.  Defendants

28  contend that Plaintiff's claim against Grimm for due process violations during Plaintiff's

1   disciplinary hearing fails as a matter of law on the grounds that the requirements of due

2   process were met.

3       Plaintiff contends that Defendant Grimm violated his right to due process under the

4   Sixth and Fourteenth Amendments.  Plaintiff contends that Defendant Grimm violated

5   established policies and procedures regarding disciplinary hearings.  Plaintiff also contends

6   that his due process rights were violated during his criminal sentencing on the grounds that

7   he was placed in physical restrains at sentencing and his right to self representation was

8   impeded.

9                   **A.      Disciplinary Hearing**

10      Plaintiff has submitted a copy of an incident report regarding a search of Plaintiff's

11  cell performed on May 1, 2005 which lists specific items of contraband that was found and

12  six specific rules or regulations which were violated.  (ECF No. 165-10 at 41).  The

13  incident report also list Plaintiff's rights with respect to a disciplinary hearing including the

14  right to be provided a written copy of the charges at least 24 hours before the hearing, the

15  right to present witnesses, and the right to be provided a written decision including the

16  determination and the facts supporting the determination.  *Id*.

17      Defendants have submitted a copy of the hearing report dated May 11, 2005, which

18  states that a disciplinary hearing had been held on May 10, 2005.  (ECF No. 152-4 at 44).

19  The disciplinary hearing report states that on May 1, 2005, Plaintiff "assaulted deputies

20  resulting in all three deputies sustaining injuries.  The makeshift weapon used by [Plaintiff]

21  during the assault was two razor blades pushed into the ends of two toothbrushes.... Based

22  on the information from the May [1, 2005] incident, Deputy Grimm wrote a report

23  temporarily revoking [Plaintiff's] pro per privileges" pending a disciplinary hearing."  *Id*.

24  The disciplinary hearing report states that a hearing was first convened on May 5, 2005, but

25  Plaintiff stated that he did not have time to prepare so the hearing was rescheduled to May

26  10, 2005.  *Id*.  The hearing report states that Plaintiff "has access to a co-counsel, a legal

27  runner and investigator and revoking his privileges will not impact his case....It is too much

28  of a security risk moving him around the facility especially considering his behavior

1    recently. *Id.* at 44-45.

2           The requirements of due process apply only to the deprivation of interests

3    encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of*

4    *Regents v. Roth*, 408 U.S. 564, 569 (1972). In addition to liberty interests that arise directly

5    from the Constitution, courts have long recognized that state law and state prison

6    regulations may give rise to liberty interests that are protected by the Fourteenth

7    Amendment. *Meachum v. Fano*, 427 U.S. 215, 223-227 (1976); *Wolff v. McDonnell*, 418

8    U.S. 539, 557-58 (1974); *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). The interest created

9    by the regulation must be something more than freedom from the restrictions ordinarily

10   contemplated by a prison sentence. *Sandin v. Conner*, 515 U.S. 472, 483-87 (1995).

11          In *Wilson v. Super. Ct. of Los Angeles*, 21 Cal. 3d. 816 (1978), the California

12   Supreme Court held that where an inmate has been given privileges in prison because he is

13   representing himself in court, those prison privileges may not be taken away without due

14   process protections. *Id.* at 822. Due process requires that a prison official seeking to

15   deprive a prisoner of a protected liberty interest as part of a disciplinary proceeding must

16   provide the prisoner with the following: "(1) advance written notice of the disciplinary

17   charges; (2) an opportunity, when consistent with institutional safety and correctional goals,

18   to call witnesses and present documentary evidence in his defense; and (3) a written

19   statement by the factfinder of the evidence relied on and the reasons for the disciplinary

20   action." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (citing *Wolff v. McDonnell*, 418

21   U.S. 539, 563-70 (1974)). Due process is satisfied where these minimum requirements

22   have been met, and where there is "some evidence" to support the decision. *See*

23   *Superintendent*, 472 U.S. at 455. The "some evidence" standard is satisfied where "there is

24   any evidence in the record that could support the conclusion reached." *Superintendent*, 472

25   U.S. at 455-56.

26          The evidence in the record shows that Plaintiff was provided advance notice of the

27   disciplinary charges; an opportunity to present a defense; and a written statement from the

28   factfinder regarding the reasons for the disciplinary action. The Court concludes that there

1  are no material facts in dispute and Defendants are entitled to judgment as a matter of law

2  as to Plaintiff's claim of violation of the Due Process Clause under the Sixth and

3  Fourteenth Amendments against Grimm.

**B.    Plaintiff's Claims Regarding his Sentencing are Not Cognizable Under 42 U.S.C. § 1983**

4
5      When a plaintiff who has been convicted of a crime under state law seeks relief in a

6  § 1983 suit, the suit is barred if judgment in favor of the plaintiff would necessarily imply

7  the invalidity of his sentence. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Heck v.*

8  *Humphrey*, 512 U.S. 477, 487 (1994); *Hooper v. County of San Diego,* Case No. 09-55954,

9  2011 WL 9732, at *2 (9th Cir. 2011); *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir.

10  1997) (discussing *Edwards v. Balisok*, 520 U.S. 641 (1997)).  Plaintiff "must demonstrate

11  the invalidity of his confinement before he is entitled to relief."  *Wilkinson* , 544 U.S. at

12  81-82 (quotations omitted).

13      In this case, Plaintiff seeks relief under § 1983 for Constitutional violations related

14  to the use of physical restraints and self-representation at sentencing in his criminal case.  A

15  judgment in Plaintiff's favor would necessarily imply his sentencing was invalid.

16  Plaintiff's additional claims against Grimm for violation of the Sixth or Fourteenth

17  Amendment due to use of physical restraints and denial of his right to self-representation

18  during his criminal sentencing are barred in this § 1983 suit.  *See Wilkinson*, 544 U.S. at

19  81-82.

**(3)    Sixth Claim: Conspiracy Against Grimm, Hightower, Rhinelander, Setter, Swiney, MacLeod, Massey, Neagles, and Grijalva**

20
21
22      Defendants contend that the conspiracy claim fails as a matter of law on the grounds

23  that "[i]ndividual members of a government body acting in their official capacities cannot

24  conspire when they act together to take official action on behalf of the governing body."

25  (ECF No. 152-1 at 16).  Defendants also contends that there is "no evidence showing

26  existence of an agreement or meeting of the minds between Defendants, whether the

27  agreement be specific or inferred from conduct ...."  (ECF No. 167 at 7).

28      Plaintiff contends that his claim of conspiracy arises under 42 U.S.C. § 1983 and

1   "the totality of factual evidence, incident reports, forensic reports, testimony,

2   interrogatories, and Plaintiff's civil verified Complaint state[] a viable conspiracy claim."

3   (ECF No. 165 at 18).  Plaintiff contends that the Defendants violated his constitutional

4   rights on the grounds that they "failed to intercede, failed to report, lied, falsified reports."

5   *Id*.  Plaintiff contends that Defendants Grijalva, Neagles, Massey, and Hightower conspired

6   to cover up the excessive force by failing to use established policies to control the

7   emergency situation, by failing to report Plaintiff's injuries, and by trying to coerce and

8   bargain with Plaintiff.

9        "A plaintiff can state a conspiracy to violate civil rights claim under either 42 U.S.C.

10   § 1983 or 42 U.S.C. § 1985." *Deadmon v. Grannis*, Case No. 06cv1382-LAB-WMC, 2008

11   WL 595883, at *12 (S.D. Cal. Feb. 29, 2008) (citing *Klingele v. Eikenberry*, 849 F.2d 409,

12   413 (9th Cir. 1988)). Section 1985 requires "an allegation of racial or class-based

13   discriminatory animus." *Klingele*, 849 F.2d at 413; *see also RK Ventures, Inc. v. City of*

14   *Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).  Plaintiff's Complaint does not allege a racial

15   or other discriminatory motive, and Plaintiff has clarified that his conspiracy claim is made

16   pursuant to 42 U.S.C. § 1983, so the Court will evaluate his conspiracy claim under the

17   requirements of § 1983.

18        The Ninth Circuit has expressly reserved decision on whether individual members of

19   a single government entity can form a conspiracy and under what circumstances.  *Portman*

20   *v. County of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993); *see also Mustafa v. Clark*

21   *County School Dist.*, 157 F.3d 1169, 1181 (9th Cir. 1998) (citing *id*.); *Webb v. County of*

22   *Trinity*, Case No. CIV. S-10-0012 LKK/CMK, 2010 WL 4628097, at *5 (E.D.Cal.Nov. 4,

23   2010) (noting that five circuits have extended the intracorporate doctrine to civil right

24   cases, and five others "have severely limited or questioned the applicability of the doctrine

25   in the civil rights context.").

26        To prove a conspiracy in violation of § 1983, a plaintiff must have sufficient

27   evidence to show (1) an agreement between the defendants to deprive the plaintiff of a

28   constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a

1  constitutional violation. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th
2  Cir. 1999) (en banc); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *see also Burns*
3  *v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).

4  "Whether defendants were involved in an unlawful conspiracy is generally a factual
5  issue and should be resolved by the jury, so long as there is a possibility that the jury can
6  infer from the circumstances (that the alleged conspirators) had a meeting of the minds and
7  thus reached a understanding to achieve the conspiracy's objectives." *Mendocino*
8  *Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301-02 (9th Cir. 1999)
9  (quotations omitted). "To be liable, each participant in the conspiracy need not know the
10 exact details of the plan, but each participant must at least share the common objective of
11 the conspiracy." *Gilbrook*, 177 F.3d at 857-58. Because conspiracies, by their very nature,
12 are secret agreements, "[a] defendant's knowledge of and participation in a conspiracy may
13 be inferred from circumstantial evidence and from evidence of the defendant's actions."
14 *Id*. "[A] showing that the alleged conspirators have committed acts that 'are unlikely to
15 have been undertaken without an agreement' may allow a jury to infer the existence of a
16 conspiracy." *Mendocino Environmental Center*, 192 F.3d at 1301 (quotation omitted).
17 However, vague and conclusory allegations of conspiracy are not sufficient to withstand a
18 motion for summary judgment. *See Woodrum v. Woodward County,* 866 F.2d 1121, 1126
19 (9th Cir. 1989) (dismissing conspiracy allegations because they were supported by
20 conclusory allegations and not material facts); *see also Taylor v. List,* 880 F.2d 1040, 1045
21 (9th Cir. 1989) (unsupported conclusory allegations are insufficient to preclude summary
22 judgment). Plaintiff must submit more than mere allegations to show a genuine issue of
23 fact as to whether there was a meeting of the minds to support conspiracy. *See Nwandu v.*
24 *Bach*, Case No. 06CV0999 MMA (WMc), 2010 WL 2486771, at *13 (S.D. Cal. Apr. 21,
25 2010) ("Although the existence of a conspiracy may be inferred from circumstantial
26 evidence, Plaintiff has not offered any evidence beyond the allegations in his complaint to
27 raise a triable issue as to whether Defendants had a 'meeting of the minds' to violate his
28 constitutional rights."); *Pool v. Multnomah County*, Case No. CIV. 99-597-AS, 2000 WL

1   1364229, at *7 (D. Or. Sept. 6, 2000) ("[T]he mere similarity of conduct among various

2   persons and the fact that they may have associated with each other, may have assembled

3   together and may have discussed some common aims and interests, is not necessarily proof

4   of the existence of a conspiracy.") (citing *Gilbrook*, 177 F.3d at 860).

5        The Court finds that Plaintiff's vague and conclusory allegations that Defendants

6   conspired against him are insufficient to withstand the Motion for Summary Judgment.

7   Plaintiff has failed to submit evidence showing that the actions of Defendants are "unlikely

8   to have been undertaken without an agreement." *See Mendocino Environmental Center*,

9   192 F.3d at 1301-02.  The Court concludes that there are no material facts in dispute and

10  Defendants are entitled to judgment as a matter of law as to Plaintiff's claim of conspiracy

11  against Grimm, Hightower, Rhinelander, Setter, Swiney, MacLeod, Massey, and Neagles.

12        **(4)    Third Claim: Assault Against Grimm, Hightower, Rhineland, Setter,**
              **Swiney, and MacLeod**

13

14       Defendant contends that under state law, assault is a distinct claim from battery.

15  Defendants contend that Plaintiff has alleged "far more serious conduct" than assault;

16  therefore, Plaintiff's assault claim fails as a matter of law.  (ECF No. 152-1 at 22).

17       Plaintiff contends that he has adequately asserted a claim of "assault and battery"

18  under state law, as well as pursuant to 42 U.S.C. § 1983, and there are material issues of

19  fact in dispute.

20       Under California law, assault and battery are crimes as well as torts, and the

21  statutory definition of the tort is borrowed from the Penal Code.  *See* 5 Witkin, SUMMARY

22  OF CALIFORNIA LAW, Torts, § 381 at 598 (10th ed. 2005).  "An assault is an unlawful

23  attempt, coupled with a present ability, to commit a violent injury on the person of

24  another." Cal. Penal Code § 240.  "A battery is any wilful and unlawful use of force or

25  violence upon the person of another."  Cal. Penal Code § 242.  In tort actions for assault

26  and battery, California courts usually assume that Penal Code sections 240 and 242 as well

27  as criminal cases are applicable.  *See Fraguglia v. Sala*, 17 Cal. App. 2d 738, 742 (1936);

28  *Jones v. Felker*, Case No. CIV S-09-3092 WBS EFB P, 2011 WL 445681, at * 3 (E.D. Cal.

    Feb. 8, 2011) ("In tort actions for assault and battery [in California], the courts usually

assume that these Penal Code definitions and related criminal cases are applicable."). "Under California law, a defendant cannot be convicted of both assault and battery, as every battery includes an element of assault, 'and is, in fact, a consummated assault.' *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 748 (E.D. Cal. 2008) (*quoting People v. Lopez*, 47 Cal. App. 3d 8, 15 (1975); *see also* People v. Pearson, 42 Cal.3d 351, 355 (Cal. 1986).

Plaintiff's state law claims of assault and battery arise from the same factual basis as his Eighth Amendment cruel and unusual punishment claim. There is a genuine dispute as to the force used against Plaintiff. The Court finds that there are issues of material fact which preclude summary judgment as to Plaintiff's state law assault claim. Accordingly, the Motion for Summary Judgment as to Plaintiff's claim for assault is DENIED.

## II.    Dr. Gabel and Gonzalez

Defendants contend that Dr. Elleen Gabel and Gonzalez should be dismissed sua sponte under Federal Rules of Civil Procedure 4(m) and 6 for failure to timely serve them.

Plaintiff contends that he "followed the established steps to serve the subpoenas, that included Dr. Elleen Gabel and Deputy Gonzalez and to this day thought that they were defendants." (ECF No. 165 at 9). Plaintiff "asks the Court for guidance to remedy defendants G. Gonzalez and Dr. Gabels subpoenas whom (sic) are not only defendants but crucial witnesses of the case at hand." *Id*. at 24.

On January 30, 2006, Plaintiff initiated this action and on February 1, 2006, Plaintiff filed a First Amended Complaint identifying Deputy Sheriff Officer Gonzalez as a defendant. (ECF No. 5 at 5). On April 10, 2006, a summons was returned unexecuted as to "Gonzalez." (ECF No. 11). Plaintiff had identified Gonzales as "Sheriff Deputy for [San Diego] County" and provided the special instruction that "Defendant Gonzalez, is a female Sheriff Deputy." *Id*. at 2. The unexecuted return stated: "Not able to identify which Gonzalez to forward this to." *Id*.

On May 30, 2006, Plaintiff filed a Second Amended Complaint which again identified Deputy Sheriff Officer Gonzalez as a defendant. (ECF No. 29 at 5). On

1   February 1, 2007, Plaintiff filed a motion requesting the addresses of three unserved

2   Defendants to "enable[] the U.S. Marshal service to serve [them]."  (ECF No. 60 at 2).

3   Defendant Gonzalez was not among the Defendants for which Plaintiff had requested

4   additional information.  *Id*.

5          On July 13, 2007, Plaintiff filed the Third Amended Complaint in which he named

6   Gonzalez and Dr. Gabel as defendants.  (ECF No. 90).  On April 3, 2008, Defendants

7   Grimm, Grijalva, Hightower, Rhinelander, Setter, Swiney, MacLeod, Neagles, and Massey

8   filed an Answer.  (ECF No. 117).  Gonzalez and Dr. Gabel did not file an answer.  On

9   January 11, 2010, Plaintiff filed an Amended Proposed Pretrial Order in which he did not

10  name Dr. Gabel and Gonzalez as defendants.[1]  (ECF No. 136).  On March 17, 2010,

11  Plaintiff filed a Second Proposed Pretrial Order in which Plaintiff did not name Dr. Gabel

12  and Gonzalez as defendants.[2]  (ECF No. 143).   To date, there are no executed returns of

13  service for Dr. Elleen Gabel or Gonzalez on the record.

14          Federal Rule of Civil Procedure 4 requires that a summons and complaint be served

15  "within 120 days after the complaint is filed."  Fed. R. Civ. P. 4(m).  If a plaintiff fails to

16  serve the summons and complaint within that time limit, the court may dismiss the action

17  without prejudice after notice to the plaintiff.  *Id*.  This Order constitutes notice to Plaintiff

18  that the Court will dismiss this action without prejudice as to Dr. Gabel and Gonzalez on or

19  after thirty days from the date of this order, unless, no later than that date, Plaintiff files

20  either (1) proof that service of the summons and complaint was timely effectuated or (2) a

21  declaration under penalty of perjury showing good cause for failure to timely serve the

22

---

23         [1]  In the Amended Proposed Pretrial Order, Plaintiff contends that he suffered injuries
    as a result of the altercation with Defendants and "Dr. Elleen Gabel ordered x-rays ...and
24  follow up; the order went unanswered and the fractures untreated ..." (ECF No. 136 at 6, 14).
    Plaintiff identifies Gonzalez as a "witness" and contends that "Gonzales (sic) ... [was] directly
25  involved [in the altercation] but [her] incident report[ was] not included by incident reporting
    (sic) CPL R. Rogers."  *Id*. at 13, 18-19.  However, Plaintiff does not allege that Dr. Gabel or
26  Gonzalez violated Plaintiff's rights.

27         [2]  In the Second Proposed Pretrial Order, Plaintiff contends that Defendants Grimm,
    Hightower, Setter, Rhinelander, Swiney, MacLeod, Neagles, Massey, and Grijalva conspired
28  against him by failing to include the Gonzalez's account of the altercation in the incident
    report. However, Plaintiff does not allege that Dr. Gabel or Gonzalez violated Plaintiff's rights.

1   Defendants with the summons and complaint accompanied by a motion for leave to serve

2   process outside of the 120 day period.  *See generally Efaw v. Williams*, 473 F.3d 1038,

3   1041 (9th Cir. 2007) (holding that a complaint filed by a pro se inmate plaintiff should be

4   dismissed as to a defendant where there was a seven-year delay in service, there was no

5   evidence that the defendant was aware of the action, and the extensive delay caused

6   prejudice to defendant due to the loss of evidence and fading of memories); *Wei v. State of*

7   *Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985) (explaining that Congress considered and

8   balanced a litigant's loss of its ability to pursue a claim against the policy of promoting

9   prompt movement of civil actions when it enacted Federal Rule of Civil Procedure 4); *see*

10  *also Troxell v. Fedders of North America, Inc.*, 160 F.3d 381, 383 (7th Cir. 1998)

11  (explaining that the trial court may consider "factors like a statute of limitations bar,

12  prejudice to the defendant, actual notice of a lawsuit, and eventual service ..." in

13  determining whether to grant an extension of time).

14  **III.   Petition for a Writ of Habeas Ad Testificandum; the Motion for Order**
    **Subpoenas for Plaintiff's Witness; the Motion for Attendance of Incarcerated**
15  **Witness**

16      On March 17, 2010, Plaintiff filed a Petition for a Writ of Habeas Ad Testificandum

17  (ECF No. 144); a Motion for Order Subpoenas for Plaintiff's Witness (ECF No. 145); and a

18  Motion for Attendance of Incarcerated Witness (ECF No. 146).

19      Defendant's Motion for Summary Judgment has been granted in part and denied in

20  part which reduces the number of claims that remain in this action to the following: the first

21  claim of cruel and unusual punishment in violation of the Eighth Amendment due to use of

22  excessive force against Grimm, Hightower, Rhinelander, Setter, Swiney, and MacLeod; the

23  third claim of intentional assault and battery against Grimm, Hightower, Rhineland, Setter,

24  Swiney, and MacLeod; and the fifth claim of cruel and unusual punishment in violation of

25  the Eighth Amendment due to deliberate indifference to Plaintiff's basic human needs

26  against Grimm.

27      Plaintiff's Petition for a Writ of Habeas Ad Testificandum (ECF No. 144); Motion

28  for Order Subpoenas for Plaintiff's Witness (ECF No. 145); and Motion for Attendance of

1   Incarcerated Witness (ECF No. 146) are DENIED as moot.

2          Plaintiff shall file a Third Amended Proposed Pretrial Order which lists a brief

3   description of the facts which support each of the remaining claims listed above on which

4   Plaintiff intends to proceed to trial and identifies witnesses in support of each claim.

5   Plaintiff shall number each claim and allege each claim in a separate paragraph.  Plaintiff

6   shall also file a motion for a writ of habeas corpus ad testificandum for any inmate

7   witnesses listed in the Third Amended Proposed Pretrial Order.  In addition, Plaintiff shall

8   file a sworn affidavit establishing the appropriateness of the issuance of a writ of habeas

9   corpus ad testificandum as to each witness. The sworn affidavit shall state: (1) what each

10  inmate witness will testify to; (2) how Plaintiff knows what the inmate witness will testify

11  to; and (3) why the testimony is necessary. *See Greene v. Prunty*, 938 F. Supp. 637, 639

12  (S.D. Cal. 1996) ("In order to grant the writ of habeas corpus ad testificandum, the Court

13  must determine not only whether an inmate-witness's testimony is relevant, but also,

14  whether such testimony is necessary. This determination depends ultimately upon whether

15  the probative value of the testimony justifies the expense and security risk associated with

16  transporting an inmate-witness to court form a correctional facility.").  Plaintiff shall file

17  his Third Amended Proposed Pretrial Order, any motion for a writ of habeas corpus ad

18  testificandum, and his affidavit in support of his motion on or before sixty days from the

19  date of this order.  Defendant shall file any response to the Third Amended Proposed

20  Pretrial Order and motion for a writ of habeas corpus ad testificandum on or before fifteen

21  days from the date they are filed.

22                              **CONCLUSION**

23          IT IS HEREBY ORDERED THAT:

24          (1)    The Motion for Summary Judgment (ECF No. 152) is GRANTED as to

25  Plaintiff's second claim of deliberate indifference to medical needs against Grimm,

26  Hightower, Rhinelander, Setter, Swiney, MacLeod, Massey, Neagles, and Grijalva; fourth

27  claim of violation of the due process clause against Grimm; and sixth claim of conspiracy

28  against Defendants Grimm, Hightower, Rhinelander, Setter, Swiney, MacLeod, Massey,

1   Neagles, and Grijalva and DENIED as to Plaintiff's claim of assault.

2       (2)    The Petition for a Writ of Habeas Ad Testificandum (ECF No. 144), the

3   Motion for Order Subpoenas for Plaintiff's Witness (ECF No. 145), the Motion for

4   Attendance of Incarcerated Witness (ECF No. 146), and the Motion for Status Update filed

5   by Plaintiff (ECF No. 168) are DENIED as moot.

6       (3)    The Court will dismiss this action without prejudice as to Dr. Gabel and

7   Gonzalez on or after thirty days from the date of this order, unless, no later than that date,

8   Plaintiff files either (1) proof that service of the summons and complaint was timely

9   effectuated or (2) a declaration under penalty of perjury showing good cause for failure to

10  timely serve the Defendants with the summons and complaint accompanied by a motion for

11  leave to serve process outside of the 120 day period.

12      (4)    Plaintiff shall file his Third Amended Proposed Pretrial Order, motion for a

13  writ of habeas corpus ad testificandum, and his affidavit in support of his motion on or

14  before sixty days from the date of this order.  Defendant shall file any response to the Third

15  Amended Proposed Pretrial Order and any response to the motion for a writ of habeas

16  corpus ad testificandum on or before fifteen days from the date the Third Amended

17  Proposed Pretrial Order, motion for a writ of habeas corpus ad testificandum, and affidavit

18  in support are filed.

19      (5)    The Court will hold a Final Pretrial Conference on June 17, 2011 at 9:30 a.m.

20  Defense counsel shall make arrangements for Plaintiff to appear telephonically. Defense

21  counsel shall notify the Court of Plaintiff's contact information for the Pretrial Conference

22  no fewer than seven days prior to the Final Pretrial Conference date.

23  DATED:  March 2, 2011

24

25  **WILLIAM Q. HAYES**
    United States District Judge

26

27

28

06cv225 WQH (PCL)